# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| CARLTON STEVENSON, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) |
| CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration, | ) Cause No. 1:13-cv-1166-WTL-DKL ) ) ) ) |
| Defendant. | ) |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Carlton Stevenson requests judicial review of the final decision of the Defendant denying Mr. Stevenson's application for Supplemental Social Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). The Court rules as follows.

## I. APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity he is not disabled, despite his medical condition and other factors. 20 C.F.R. § 416.920(a)(4)(i). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits

his ability to perform basic work activities), he is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 416.920(a)(4)(iii). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). At step five, if the claimant can perform any other work in the national economy, he is not disabled. 20 C.F.R. § 416.920(a)(4)(v).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id.*, and this court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997). The ALJ is required to articulate only a minimal, but legitimate, justification for her acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). In order to be affirmed, the ALJ must articulate her analysis of the evidence in her decision; while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into [his] reasoning . . . [and] build an accurate and logical bridge from the evidence to [his] conclusion." *Dixon*, 270 F.3d at 1176.

## II. PROCEDURAL HISTORY

Mr. Stevenson filed an application for SSI on December 2, 2009, alleging disability beginning February 1, 2003, due to encephalitis, a non-traumatic brain injury, seizures, and

emotional stress and addiction issues. His application was initially denied on June 28, 2010, and again upon reconsideration on December 13, 2010. He requested and was granted a hearing before an Administrative Law Judge ("ALJ"). A video hearing was held by ALJ Dennis R. Kramer on March 14, 2012. The ALJ presided over the hearing from Valparaiso, Indiana. Mr. Stevenson testified via telephone from the Putnamville Correctional Facility. His attorney participated in the hearing from Danville, Illinois. Two experts, Richard T. Fisher, a vocational expert ("VE"), and Dr. Larry Kravitz, Ph.D., a psychological expert, appeared and testified at the hearing. Dr. William C. Houser, a medical expert, testified via telephone. At the hearing, Mr. Stevenson, through his attorney, amended the alleged onset date of disability to December 2, 2009, the date his application was filed. R. at 80.

ALJ Kramer issued his decision denying Mr. Stevenson's request for benefits on March 30, 2012. On May 20, 2013, the Appeals Council denied review of the ALJ's decision, thereby rendering the ALJ's decision the final decision of the Commissioner and subject to judicial review. Mr. Stevenson then filed this timely appeal.

### III. EVIDENCE OF RECORD

The evidence of record is aptly set forth in the parties' briefs and need not be recited here. Specific facts are set forth in the discussion section below where relevant.

### IV. THE ALJ'S DECISION

The ALJ determined at step one that Mr. Stevenson had not engaged in substantial gainful activity since December 2, 2009, the amended alleged onset date. At steps two and three, the ALJ concluded that Mr. Stevenson had the following severe impairments: a seizure disorder, post traumatic headaches, a history of deep vein thrombosis in his right upper extremity, encephalopathy, an affective disorder, an antisocial personality disorder, an amnestic disorder,

3

and a psychosis not otherwise specified. *Id.* at 23. The ALJ did not find that his impairments, singly or in combination, met or medically equaled a listed impairment. At step four, the ALJ determined that Mr. Stevenson had the residual functional capacity ("RFC") to perform work with the following restrictions:

> Occasionally lift and/or carry 11 to 20 pounds and frequently lift and/or carry up to 10 pounds. He can sit for two hours, stand for two hours, or walk for two hours at one time without interruption. The claimant can sit for eight hours, stand for six hours, or walk for six hours total in an eight-hour workday. He can continuously reach overhead, reach in all other directions, handle, finger, feel, or push/pull with his left hand. The claimant can occasionally reach overhead, reach in all other directions, or push/pull with his right dominant hand, but he can continuously handle, finger, or feel with his right hand. He can continuously operate foot controls with his feet bilaterally. The claimant can never climb ladders or scaffolds. He can occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl. The claimant can never have exposure to unprotected heights, moving mechanical parts, or operating a motor vehicle. He can have continuous exposure to humidity and wetness; dusts, odors, fumes, and pulmonary irritants; extreme cold; extreme heat; or vibrations. The claimant can tolerate exposure to very loud noise. He can perform activities like shopping. The claimant can travel without a companion for assistance such as for public transportation but not for driving. He can ambulate without using a wheelchair, walker, or two canes or two crutches. The claimant can walk a block at a reasonable pace on rough or uneven surfaces. He can use standard public transportation. The claimant can climb a few steps at a reasonable pace with the use of a single hand rail. He can prepare a simple meal and feed himself. The claimant can care for his personal hygiene. He can sort, handle, or use paper/files. The claimant has mild restriction in his ability to understand and remember simple instructions and mild restriction in his ability to carry out simple instructions. He has moderate restriction in his ability to make judgments on simple work-related decisions. The claimant has marked restriction in his ability to understand and remember complex instructions, carry out complex instructions, and make judgments on complex work-related decisions. He has moderate restriction in his ability to interact appropriately with the public, interact appropriately with supervisors, interact appropriately with co-workers, and respond appropriately to usual work situations and to changes in a routine work setting. The claimant can understand, remember, and carry out simple instructions. He can make judgments on simple work-related decisions. The claimant is able to respond to minimal work situations and minimal changes in a routine work setting. He requires work that is isolated from the public with only occasional supervision and only occasional interaction with co-workers.

*Id.* at 26. Given this RFC, the ALJ determined that Mr. Stevenson could not perform any of his past relevant work. Finally, at step five, the ALJ determined that he could perform a range of light, unskilled work that exists in the national economy, including a routing clerk, a marker, and a mail clerk. *Id.* at 33-34. Accordingly, the ALJ concluded that Mr. Stevenson was not disabled as defined by the Act.

## V.    DISCUSSION

Mr. Stevenson advances several objections to the ALJ's decision; each is addressed below.

### A. Lack of Substantial Evidence to Support the ALJ's Decision

Mr. Stevenson argues that substantial evidence fails to support the ALJ's determination that his psychosis and Global Assessment Functioning ("GAF") score of 50 did not meet or medically equal Listing 12.03. Listing 12.03 requires the satisfaction of both paragraphs A and B or the satisfaction of paragraph C. The ALJ found that Mr. Stevenson did not meet or medically equal the requirements in paragraph B which require at least two of the following: 1) marked restriction of activities of daily living; 2) marked difficulties in maintaining social functioning; 3) marked difficulties in maintaining concentration, persistence, or pace; or 4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. § 404, app. 1. A marked restriction means "more than moderate but less than extreme" and "may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." *Id.*

The ALJ also found that Mr. Stevenson did not meet or medically equal the requirements in paragraph C which require a medically documented history of a chronic schizophrenic,

paranoid, or other psychotic disorder of at least two years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following: 1) repeated episodes of decompensation, each of extended duration; 2) a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or 3) current history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement. *Id.*

In his decision, the ALJ found that Mr. Stevenson has moderate restrictions in activities of daily living, noting that he needs reminders to take care of personal needs and grooming and to take his medication. The ALJ noted that although Mr. Stevenson alleges he cannot cook, leaves water running, and cannot drive due to his seizures, he has no problems actually performing personal care, performing household chores, and using public transportation. The ALJ also found that Mr. Stevenson has moderate restrictions in maintaining social functioning, noting that he claims he has problems getting along with family, friends, neighbors, and others, and he gets irritable and snaps at people. The ALJ also found that Mr. Stevenson has moderate difficulties with concentration, persistence, or pace, noting that Mr. Stevenson reports that he does not follow instructions well and does not handle stress or changes in routine well. Finally, the ALJ noted that Mr. Stevenson has experienced one to two episodes of decompensation, each of extended duration, towards the end of 2009 and into the beginning of 2010, but that there was no other evidence of episodes of decompensation of an extended duration in the record since his amended alleged onset date. Regarding paragraph C, the ALJ noted again that there have not been repeated episodes of extended decompensation, that Mr. Stevenson has sufficient

adaptability to maintain extensive daily activities, and that he is able to function outside of his home. Accordingly, the ALJ found that Mr. Stevenson did not meet or equal the requirements of paragraphs B or C.

Mr. Stevenson first argues that the ALJ misstated the testimony of Dr. Kravitz by concluding that Mr. Stevenson was not diagnosed with psychosis. The Court, however, does not read in the ALJ's decision anything that indicates that the ALJ concluded that Mr. Stevenson was not diagnosed with psychosis. Rather, the ALJ included "psychosis not otherwise specified" in his list of Mr. Stevenson's severe impairments. R. at 23.

Mr. Stevenson next argues that the ALJ erroneously rejected his GAF score of 50. The ALJ discussed Mr. Stevenson's GAF scores at length, noting that his GAF score of 50 was assigned in September 2009, prior to his amended alleged onset date.[1] The ALJ also noted that "because a GAF score is an assessment of the claimant's functioning at a specific point in time and is highly dependent on the claimant's current situation, it provides no indication of the claimant's overall level of functioning over an extended period." R. at 30. The ALJ noted that more recently, Mr. Stevenson had been assigned a GAF score of 60, and concluded that his score of 50 was not indicative of his overall mental functioning since his amended alleged onset date. The Court sees no error in the ALJ's treatment of Mr. Stevenson's GAF scores. GAF scores, standing alone, do not automatically warrant a finding of disability or that a claimant equals a Listing. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("[N]owhere do the Social Security regulations or case law require an ALJ to determine the extent of an individual's disability based entirely on his GAF score.") (quoting *Wilkins v. Barnhart*, 69 Fed. Appx. 775,

---

[1] In his reply brief, Mr. Stevenson states that his alleged disability onset date was February 1, 2003. As noted above, however, the alleged onset date was amended during the hearing to the filing date, which was December 2, 2009. R. at 80.

780 (7th Cir. 2003)). Thus, even if the ALJ had placed greater weight on Mr. Stevenson's GAF score of 50, he would not have been required to find him disabled and/or that he met a Listing, as GAF scores are just one piece of evidence an ALJ may consider.

Finally, Mr. Stevenson asserts that the ALJ erred in rejecting Dr. Adam Fisch's opinion that Mr. Stevenson's static encephalopathy is "severely disabling for him" and that his rejection of this "evidence of disability cited no contrary psychological evidence." Pl.'s Br. at 12. The ALJ explained why he gave Dr. Fisch's opinion little weight, noting that it was not supported by the record as a whole, including Dr. Fisch's own treatment notes. R. at 32. Dr. Fisch noted that since Mr. Stevenson's last visit, he had one seizure when he did not take his medication, but otherwise had done well and that his seizures are fairly well-controlled when he remains on his medications. Regarding Mr. Stevenson's encephalopathy, Dr. Fisch noted that "this was severely disabling for him. I do not have a good sense of the degree of his disability. This is why we are sending him for neuropsychiatric testing. . . .The patient himself is not substantially bothered by his cognitive dysfunctions." *Id.* at 793.

The Court agrees with the Commissioner that the ALJ's evaluation of this inconclusive opinion was reasonable. Further, the ALJ properly gave Dr. Fisch's opinion little weight because the ALJ relied instead on Dr. Kravitz's testimony, which contradicted Dr. Fisch's opinion. He noted that he gave Dr. Kravitz's opinion "substantial evidentiary weight as [it was] within the purview of [his] expertise, based on [his] particular and detailed knowledge of the standard of disability as set forth by the Commissioner, and consistent with the record as a whole." *Id.* at 31. At the hearing, Dr. Kravitz discussed at length Mr. Stevenson's mental capacity, and he testified that "the severity of the deficits is variable depending on the reporter, the medical source as well as a third party source. . . . I offer [that] he would not meet or equal a

listing." *Id.* at 85. *See Bates v. Colvin*, 736 F.3d 1093, 1099-00 (7th Cir. 2013) (noting that when well-supported evidence contradicts a treating physician's opinion, that opinion "becomes just one more piece of evidence for the ALJ to consider.").

### B. The ALJ's Credibility Determination

Mr. Stevenson next argues that the ALJ's credibility determination is patently erroneous because it is contrary to Social Security Ruling ("SSR") 96-7p and "is contrary to the evidence, because the ALJ arbitrarily and erroneously rejected the evidence which proved the claimant's disability." Pl.'s Br. at 16. In determining credibility, an ALJ must consider several factors, including the claimant's daily activities, level of pain or symptoms, aggravating factors, medication, treatment, and limitations, *see* 20 C.F.R. § 404.1529(c); S.S.R. 96–7p, and justify his finding with specific reasons. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). "Furthermore, the ALJ may not discredit a claimant's testimony about [his] pain and limitations solely because there is no objective medical evidence supporting it." *Id.* (citations omitted). District courts "afford a credibility finding 'considerable deference,' and overturn [a finding] only if 'patently wrong.'" *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quoting *Carradine v. Barnhart*, 36 F.3d 751, 758 (7th Cir. 2004)).

Mr. Stevenson seems to fault the ALJ for using boilerplate language to explain his credibility finding. Although the Court shares in the sentiments expressed by the Seventh Circuit regarding the meaninglessness of Social Security "templates," such as the one used here, *see, e.g.*, *Bjornson v. Astrue*, 671 F.3d 640, 645-46 (7th Cir. 2012), the ALJ in this case conducted a thorough credibility determination and identified several specific reasons for his finding. In addition to the objective medical evidence he cited at length, R. at 28-30, the ALJ also discussed the factors in SSR 96-7p, noting, for example, Mr. Stevenson's daily activities, the lack of side

9

effects from his medications, opinions from his physicians, third-party statements from his wife and sister, and his lack of treatment when it was available. The ALJ also specifically noted statements he did not find credible; for example, Mr. Stevenson testified that he suffered from three seizures while in prison, but the medical evidence mentioned no seizures while he was in prison. Finally, the ALJ referred to Mr. Stevenson's long history of cocaine and marijuana use. *See Simila v. Astrue*, 573 F.3d 503, 519-20 (7th Cir. 2009) (noting that the claimant's history of cocaine use, drug abuse, and addiction was "hardly the kind of conduct that helps one succeed on a disability claim"). In all, the Court is satisfied with the reasoning of the ALJ's credibility determination and does not find it to be patently erroneous.

Mr. Stevenson takes issue with the fact that the ALJ noted the gaps in his medical treatment. An ALJ can consider infrequent treatment or failure to follow a treatment plan, but "must not draw any inferences about a claimant's condition from this failure unless the ALJ has explored the claimant's explanations as to the lack of medical care." *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) (internal quotation marks omitted). The gaps in Mr. Stevenson's medical treatment begin close to the time he became incarcerated in April 2011. The ALJ noted that even though Mr. Stevenson had access to healthcare while he was in prison, he did not seek any treatment for his alleged physical or mental impairments. Even though the ALJ did not inquire as to why Mr. Stevenson did not seek treatment while in prison, and erred in considering this against him, the Court does not find this to warrant remand because the ALJ's credibility determination is supported by other valid reasons noted above.

### C. Step Five Determination

Finally, Mr. Stevenson argues that the ALJ erred when he determined that Mr. Stevenson was not disabled because he could perform some jobs. The source of this error, Mr. Stevenson

argues, is the ALJ's RFC assessment that did not accurately describe his impairments, including his brain damage, psychosis, GAF score of 50, and his moderate impairments in social functioning and in concentration, persistence, or pace. In support of his argument, Mr. Stevenson analogizes this case to *Yost v. Astrue*, in which the decision of the Commissioner was reversed because the court "simply [could] not know whether the ALJ sufficiently addressed the limitations of concentration, persistence and pace by instructing the VE to consider only simple, unskilled jobs." 2012 WL 2814373 at *20 (N.D. Ill. 2012). The Seventh Circuit expressed concern that focusing on the skill level of the work did not fully address the impact of mental limitations. *Id.* Here, however, to the extent that the ALJ found Mr. Stevenson to have mental impairments and moderate restrictions in social functioning and in maintaining concentration, persistence, or pace, his RFC adequately reflects those limitations in a way that distinguishes this case from *Yost*. The ALJ did not simply limit Mr. Stevenson to "simple, unskilled jobs." Rather, the ALJ explained that

> in consideration of the claimant's severe mental impairments, [the ALJ] finds he can understand, remember, and carry out only simple instructions. Further, [the ALJ] finds he can make judgments on only simple work-related decisions, and he is able to respond to only minimal work situations and only minimal changes in a routine work setting. In addition, [the ALJ] finds the claimant requires work that is isolated from the public with only occasional supervision and only occasional interaction with co-workers.

R. at 30. As for Mr. Stevenson's GAF score of 50, for the reasons discussed above, the Court does not agree that this omission warrants remand. The ALJ's hypothetical was entirely consistent with his RFC finding, and accordingly, the Court finds no reversible error.

11

## VI. CONCLUSION

The ALJ in this case satisfied his obligation to articulate the reasons for his decision, and that decision is supported by substantial evidence in the record. Accordingly, the decision of the Commissioner is **AFFIRMED.**

SO ORDERED: 9/17/14

_William T. Lawrence_
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication